**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
_____

**ROGER H. KAYE** and **ROGER H. KAYE, MD**
**PC,** on behalf of themselves and all others similarly
situated**,**

                 **Plaintiffs,**

          **-vs.-**

**AMICUS MEDIATION & ARBITRATION**
**GROUP, INC.** and **HILLARY EARLE,**

               **Defendants.**
_____

**3:13 CV 347 (JCH)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION**
**FOR CLASS CERTIFICATION AND FOR A TEMPORARY STAY OF FURTHER**
**PROCEEDINGS ON THAT MOTION**

BELLIN & ASSOCIATES LLC
By: Aytan Y. Bellin, Esq.  ct28454
85 Miles Avenue
White Plains, New York 10606
(914) 358-5345
aytan.bellin@bellinlaw.com

Roger Furman, Esq. (motion for admission
       _pro hac vice_ pending)
7845 Henefer Avenue
Los Angeles, California 90045
Tel: (310) 568-0640
Fax: (310) 694-9083
Roger.furman@yahoo.com

_Attorneys for Plaintiffs and the proposed classes_

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................3

ARGUMENT ...........................................................................................................5

     I.      BY TAKING THIS MOTION UNDER SUBMISSION, THIS COURT
           WILL AVOID HAVING TO RESOLVE AN INTER-CIRCUIT CONFLICT
           ON WHETHER A DEFENDANT'S RULE 68 OFFER OF FULL RELIEF
           ON A PLAINTIFFS' INDIVIDUAL CLAIMS MOOTS FURTHER
           PROCEEDINGS ON THE PLAINTIFF'S CLASS CLAIMS ................................5

     II.     THIS COURT SHOULD STAY FURTHER ACTIVITY ON THIS MOTION
           UNTIL THE DEADLINE THE COURT SETS IN ITS SCHEDULING
           ORDER FOR COMPLETING DISCOVERY ........................................................7

     III.    IN THE ALTERNATIVE, THIS COURT SHOULD CERTIFY PLAINTIFFS'
           THREE PROPOSED CLASSES .........................................................................9

           A.      RULE 23(A)(1) – NUMEROSITY ..........................................................10

           B.      RULE 23(A)(2) – COMMONALITY – AND RULE 23(B)(3) –
                 COMMON QUESTIONS OF LAW OR FACT PREDOMINATE .........11

           C.      RULE 23(A)(3) – TYPICALITY ............................................................16

           D.      RULE 23(A)(4) – ADEQUACY OF PLAINTIFFS AS CLASS
                 REPRESENTATIVE ................................................................................17

            E.      RULE 23(B)(3) – A CLASS ACTION IS SUPERIOR TO
                 OTHER AVAILABLE METHODS OF RESOLVING THIS
                 CONTROVERSY ....................................................................................18

            F.      RULE 23(G) – THE ATTORNEYS SEEKING TO REPRESENT
                 THE CLASSES SATISFY THE REQUIREMENTS OF RULE 23(G)....20

CONCLUSION.......................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Andrews v. Bechtel Power Corp.*, 785 F.2d 124 (1st Cir. 1985) .................................................... 17

*Bais Yaakov of Spring Valley v. Alloy, Inc.*, -- F. Supp.2d --, 2013 WL 1285408 (S.D.N.Y. 2013) .................................................................................................................. 14

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ...................................................................... 11

*Brady v. LAC, Inc.*, 72 F.R.D. 22 (S.D.N.Y. 1976) ...................................................................... 19

*Brown v. Kelly*, 609 F.3d 467, 483 (2nd Cir. 2010) ...................................................................... 14

*CE Design v. Beaty Const., Inc.*, 2009 WL 192481 (N.D. Ill. 2009) ............................................ 13

*Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962 (2d Cir. 1978) ...................................................................................................................... 8

*Clark v. Sprint Spectrum L.P.*, 2011 WL 835487 (C.D. Cal. 2011) ............................................... 8

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ...................................................... 17

*Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011) .................................................. passim

*Daniels v. Amerco*, 1982 WL 1856 (S.D.N.Y. 1982) ...................................................................... 8

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225 (7th Cir. 1983) ....................................... 16

*Display South, Inc. v. Graphics House Sports Promotion, Inc.*, 992 So.2d 510 (La. App. 2008) .................................................................................................................. 13

*Eshaghi v. Hanley Dawson Cadillac Co*, 214 Ill.App.3d 995, 574 N.E.2d 760, 766 (Ill. App. Ct. 1991) .............................................................................................................. 9

*Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968) ................................................................... 9

*Evans v. United States Pipe & Foundry*, 696 F.2d 925 (11th Cir. 1983) ...................................... 10

*Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984) ............................................. 11

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48 (S.D.N.Y. 1987) .......... 11

*Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008) ................................................. 14

*Genesis Healthcare Corp. v. Stmczyk*, -- U.S. --, 133 S. Ct. 1523 (2013) ..................................... 7

*Green v. Wolf Corp.*, 406 F.2d 291 (2nd Cir. 1968), *cert. denied*, 395 U.S. 977 (1969) ............... 20

*Haywood v. Superior Bank*, 244 Ill.App.3d 326, 614 N.E.2d 461 (Ill. App. Ct. 1993) .............. 11

*Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) ...................... 11

*Hertz v. Canrad Precision Industries, Inc.*, No. 69 CIV 174, 1970 WL 236
    (S.D.N.Y. 1970) ...................................................................................................... 21

*In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982)...................................... 10

*In re Broadhollow Funding Corp.*, 66 B.R. 1005 (Bankr. E.D.N.Y. 1986) ................................ 21

*In re Folding Cartons Antitrust Litigation*, 75 F.R.D. 727 (N.D. Ill. 1977)............................ 9, 19

*In re Playmobil Antitrust Litigation*, 35 F. Supp.2d 231 (E.D.N.Y. 1998) ................................ 17

*Kavu, Inc. v. Omnipak Corporation*, 246 F.R.D. 642 (W.D. Wash. 2007) ................................. 14

*Ketch, Inc.* v. *Heubel Material Handling Inc.,* 2011 WL 1807329
    (W.D. Okla. 2011) ................................................................................................... 15

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994)................................................ 19

*Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011)...................... 1, 6

*McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002) ..................................................... 10

*McClendon v. Continental Group, Inc.*, 113 F.R.D. 39 (D.N.J. 1986)......................................... 11

*Patrykus v. Gomilla*, 121 F.R.D. 357 (N.D. Ill. 1988).................................................................. 11

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) .................................................... 1, 5

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993)............................ 16

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ................................................................... 17

*Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008)............................................... 1, 6

*Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp.2d 602 (S.D.N.Y. 2010)........................... 17

*Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554 (C.D. Cal. 2012) ...................................... 14

*Weiss v. Regal Collections*, 385 F.3d 337 (3rd Cir. 2004)........................................................ 1, 6

**Statutes**

47 U.S.C. § 227(b)(1)(C)(i) ........................................................................................................ 15

47 U.S.C. § 227 (b)(1)(C)(iii) ..................................................................................................... 15

Conn. Gen. Stat Ann. § 52-570c ........................................................................ 1, 3, 4, 5

Conn. Gen. Stat. Ann. § 52-570c(a).................................................................... 13, 15

Conn. Stat. Ann. § 52-570c(b)(3)(C) ................................................................. 15

## **Federal Rules**

Federal Rules of Civil Procedure Rule 23 ........................................................ 1, 6, 16

Federal Rules of Civil Procedure 23(a) ............................................................ 9

Federal Rules of Civil Procedure Rule 23(a)(1) ............................................... 10

Federal Rules of Civil Procedure Rule 23(a)(2) ............................................... 11

Federal Rules of Civil Procedure Rule 23(a)(3) ............................................... 16

Federal Rules of Civil Procedure Rule 23(a)(4) ............................................... 17

Federal Rules of Civil Procedure Rule 23(b)(3) ............................................... 9, 14, 18

Federal Rules of Civil Procedure Rule 23(g)..................................................... 20

Federal Rules of Civil Procedure Rule 23(g)(l)................................................. 20

Federal Rules of Civil Procedure Rule 23(g)(1)(A) .......................................... 20, 21

Federal Rules of Civil Procedure Rule 68 ......................................................... 5, 6

## **Other Authorities**

2 H. Newberg, *Newberg on Class Actions*, § 4:35.......................................... 8, 10, 20

## INTRODUCTION

Plaintiffs Roger H. Kaye and Roger H. Kaye, MD PC (collectively, "Plaintiffs) have brought this action against Amicus Mediation & Arbitration Group, Inc. and Hilary Earle (collectively, "Defendants") for sending thousands of fax advertisements to Plaintiffs and others across the United States in violation of the federal Telephone Consumer Protection Act (the "TCPA") and Conn. Gen. Stat Ann. § 52-570c.  Although this action is in its pleading phase, with Defendants' responsive pleadings currently due on May 6, 2013, Plaintiffs are making this class certification motion at this early juncture for a prophylactic purpose:  to avoid any controversy that might arise if Defendants were to make an offer of judgment pursuant to Federal Rule of Procedure 68 for the full amount Plaintiffs have demanded on their individual claims prior to Plaintiffs' filing this class certification motion.

On the one hand, the Third, Fifth, Ninth and Tenth Circuits have ruled that after a defendant has made an offer of relief to the named plaintiffs for the full amount of those plaintiffs' individual claims in a yet-to-be-certified class action, the rest of the case will *not* be rendered moot, and the plaintiffs may subsequently move for class certification (so long as they do so without undue delay).  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249-50 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-21 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3rd Cir. 2004).  Plaintiffs believe that this is the better reasoned line of precedent, consistent with the purposes of the class action procedures set forth in Rule 23 of the Federal Rules of Civil Procedure.

On the other hand, the Seventh Circuit ruled in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 894-97 (7th Cir. 2011), that a pre-certification motion offer of full individual relief to named

1

plaintiffs does moot the remaining class action portion of a case.  In partial justification of its ruling, the Seventh Circuit reasoned that if the plaintiffs had filed a motion for class certification at the beginning of the litigation, before the defendant had made such an offer of complete relief, the case would not have been rendered moot, and the plaintiffs would have been able to pursue class relief.  *Id.* at 896.  The Seventh Circuit further reasoned that "[i]f the parties have yet to fully develop the facts needed for certification, then they can further ask the district court to delay its ruling to provide time for additional discovery or investigation."  *Id*.

To avoid requiring this Court to take sides in this inter-circuit conflict – on which the Second Circuit has yet to rule – and to avoid the adverse effects of *Damasco* in case this Court were to follow it, Plaintiffs are following the preemptive procedure invited by the Seventh Circuit in *Damasco*:  filing an early class certification motion accompanied by a request to delay ruling on that motion until after the parties have been able to conduct appropriate discovery.  By so doing, Plaintiffs are preserving their ability to obtain this Court's determination on whether Plaintiffs' proposed classes should be certified irrespective of which of the two conflicting lines of federal precedent were to apply in this case.  Not only does *Damasco* provide this Court with authority to grant this motion, but well settled caselaw in this Circuit, as elsewhere, authorizes the Court to defer consideration of a class certification motion to enable the parties to conduct discovery, and indeed holds that failure to enable the parties to do so may constitute an abuse of discretion.

As demonstrated below, should this Court desire to permit the parties to conduct discovery into class certification issues before deciding this motion – which Plaintiffs believe is the best course of action – this Court should defer any further activity on this motion until after the discovery cutoff date to be set in the Court's upcoming Rule 26 scheduling order.  In the

alternative, Plaintiffs request that, based on the evidence they have so far obtained, this Court certify the three classes they seek to represent, and appoint Plaintiffs' counsel as class counsel.

## STATEMENT OF FACTS

Plaintiff Roger H. Kaye is a physician who practices at Plaintiff Roger H. Kaye, MD PC, a Connecticut corporation, located at in Norwalk, Connecticut.  Kaye Decl., ¶¶ 1-2.  At all relevant times to the instant case, Plaintiffs had telephone service at 30 Stevens Street, Norwalk Connecticut 06580 where Plaintiffs received facsimile transmissions.  Kaye Decl., ¶ 2.

On or about October 17, 2010, January 14, 2011, January 22, 2011, January 30, 2011, June 6, 2011 and June 25, 2011, Defendants, without Plaintiffs' express invitation or permission, caused at least six faxes advertising Defendants' mediation services (the "Fax Advertisements") to be sent to Plaintiffs' fax machine.  Kaye Decl. ¶ 3 & Exh. A thereto.  All of Defendants' Fax Advertisements contain a notice (the "Opt-Out Notice") at the bottom stating:

NOTE: The information contained in this email message is intended only for use of the individual or entity named above.  If the reader of this message is not the intended recipient, or if you have received this communication in error, or wish to not receive any further emails please immediately notify us notify us [sic] by e-mail at hillary.earle@amicusadr.com and destroy the original message.  Thank you.

Kaye Decl., Exh. A.

Plaintiffs filed their Complaint in this action on March 14, 2013, alleging four causes of action for violation of the TCPA and its Connecticut counterpart, Conn. Gen. Stat. 52-570c. Kaye Decl., Exh. B.  As alleged in Plaintiffs' Complaint, Defendants have, from March 14, 2009 through March 14, 2013, either negligently or willfully and/or knowingly sent and/or arranged to be sent well over 5,000 unsolicited and/or solicited fax advertisements to fax machines and/or

computers belonging to thousands of persons all over the United States.   Those fax advertisements contained a notice identical or substantially similar to the Opt-Out Notice contained in the Fax Advertisements sent to Plaintiffs, which Plaintiffs allege violates the TCPA *irrespective of whether the faxes were solicited or unsolicited*.   Kaye Decl., Exh. B, ¶¶ 15, 16. To the extent those faxes were *unsolicited*, they violate the TCPA for that reason as well.

As further alleged in Plaintiffs' Complaint, Defendants also have, from March 14, 2011 through March 14, 2013, either negligently or willfully and/or knowingly sent and/or arranged to be sent thousands of *unsolicited* fax advertisements to fax machines and/or computers belonging to thousands of persons *in Connecticut*, which Plaintiffs allege violates Conn. Gen. Stat. 52-570c.  Kaye Decl., Exh. B, ¶ 17.

Plaintiffs have defined the three classes of persons they seek to represent in this action (the "Classes") as follows:

Class A:   All persons from four years prior to the date of the filing of the Complaint through the present to whom Defendants sent or caused to be sent a *solicited or unsolicited* facsimile advertisement advertising the commercial availability or quality of any property, goods, or services *that contained a notice* identical or substantially similar to the Opt-Out Notice in the Fax Advertisements sent to Plaintiffs.   This class is defined to cover Defendants' TCPA violations for sending fax advertisements with defective opt-out notices, which violates the TCPA irrespective of whether the fax advertisement is unsolicited or solicited.

Class B:   All persons from four years prior to the date of the filing of the Complaint through the present to whom Defendants sent or caused to be sent an *unsolicited* facsimile advertisement advertising the commercial availability or quality of any property, goods, or services *that contained a notice* identical or substantially similar to the Opt-Out Notice

4

on the Fax Advertisements sent to Plaintiffs.  This class is defined to include Defendants' TCPA violations for sending fax advertisements with defective opt-out notices and without recipients' express consent.

      Class C:  All persons *in the State of Connecticut* to whom, from two years prior to the date of the filing of the Complaint to the present, Defendants sent or caused to be sent a facsimile advertisement *without having obtained express invitation or permission* to do so. Kaye Decl., Exh. B, ¶ 19.  This class is defined to include Defendants' violations of Conn. Gen. Stat. § 52-570c for sending unsolicited faxes to recipients in Connecticut.

With the Court's approval, both sides extended the deadline for Defendants' filing their responsive pleadings in this action to May 6, 2013.  Bellin Decl., ¶ 9.  Pursuant to Local Rule 26(f), the parties must meet, and then prepare and file, their joint Rule 26(f) report by May 22, 2013 (30 plus 14 days after Defendants' April 8, 2013 appearance in this case).  Paragraph (2) of this Court's March 14, 2013 form Order on Pretrial Deadlines sets an initial deadline of May 13, 2013 (60 days from the March 14, 2013 date when Plaintiffs filed their Complaint) for Plaintiffs to file this class certification motion.  *Id.*

**ARGUMENT**

**I.**    **BY TAKING THIS MOTION UNDER SUBMISSION, THIS COURT WILL AVOID HAVING TO RESOLVE AN INTER-CIRCUIT CONFLICT ON WHETHER A DEFENDANT'S** RULE 68 **OFFER OF FULL RELIEF ON A PLAINTIFFS' INDIVIDUAL CLAIMS MOOTS FURTHER PROCEEDINGS ON THE PLAINTIFF'S CLASS CLAIMS**

As outlined above, four Circuits have ruled that if a defendant makes an offer of judgment for the full amount of a plaintiffs' individual claims, such an offer will not render the plaintiffs' remaining class claims in a litigation moot, and hence the plaintiffs may continue to pursue their certification.  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011)

5

(". . . an unaccepted Rule 68 offer of judgment—for the full amount of the named plaintiff's individual claim and made before the named plaintiff files a motion for class certification—does not moot a class action"); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249-50 (10th Cir. 2011) ("the federal court's Article III jurisdiction to hear the motion for class certification is not extinguished by the Rule 68 offer of judgment to an individual plaintiff"); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 921 (5th Cir. 2008) ("If the court ultimately grants the motion to certify, then the Rule 68 offer to the individual plaintiff would not fully satisfy the claims of everyone in the collective action; if the court denies the motion to certify, then the Rule 68 offer of judgment renders the individual plaintiff's claims moot"); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3rd Cir. 2004) ("Absent undue delay in filing a motion for class certification, therefore, where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint").  If the Second Circuit, which has yet to rule on the matter, were to deem this precedent applicable here, Plaintiffs would not face any potential obstacles to certifying any classes under Rule 23 resulting from any Rule 68 offer of judgment made by Defendants.

The Seventh Circuit, however, has ruled just the opposite:  ". . . a plaintiff cannot avoid mootness by moving for class certification after receiving an offer of full relief."  *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011) (citation omitted).  Nevertheless, the *Damasco* court explicitly stated that class plaintiffs could avoid any mootness problems resulting from an offer of judgment by making a class certification motion at the inception of a class action litigation, and further stated that the plaintiffs could ask the district court to delay ruling on the motion so the parties may conduct discovery:

> A simple solution to the buy-off problem that Damasco identifies is available, and it does not require us to forge a new rule that runs afoul of Article III: Class-action plaintiffs can move to certify the class at the same time that they file their complaint. . . .  If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.

662 F.3d at 896.[1]

Plaintiffs believe that the better reasoned caselaw, consistent with the purposes of Rule 23, is the first line of precedent discussed above, pursuant to which Plaintiffs would be entitled to make their class certification motion after Defendants make any offer of judgment. Nevertheless, to avoid any problems that might arise if this Court or the Second Circuit were to follow *Damasco*, Plaintiffs are simply following the lead of *Damasco* by making this motion at this early juncture.  By so doing, Plaintiffs are preserving their ability to obtain this Court's ruling on their class certification motion under either line of caselaw.

## II.   THIS COURT SHOULD STAY FURTHER ACTIVITY ON THIS MOTION UNTIL THE DEADLINE THE COURT SETS IN ITS SCHEDULING ORDER FOR COMPLETING DISCOVERY

As demonstrated in the section of this memorandum that immediately follows, Plaintiffs believe they have sufficient proof to justify certifying the classes they have identified. Nevertheless, Plaintiffs believe the best course of action at this early juncture would be for this Court to delay ruling on this motion until both sides have had sufficient time to conduct additional discovery and investigation into the various issues that will inform the Court's class certification determination.

---

[1] While the U.S. Supreme Court has not ruled on this issue,  the Supreme Court's recent decision in *Genesis Healthcare Corp. v. Stmczyk*, -- U.S. --, 133 S. Ct. 1523, 1532 (2013), is an additional reason for Plaintiffs' concern.  In *Genesis Healthcare*, the Court that ruled that a collective action under the Fair Labor Standards Act was no longer justiciable, after the Court assumed, without deciding, that that an offer of individual judgment pursuant to Rule 68 to the plaintiff mooted the plaintiff's individual claims.

Not only does *Damasco* authorize this Court to defer ruling on this motion, but well settled law of the Second Circuit and other Circuits authorizes, and typically requires, a district court to permit parties to conduct discovery *before* determining a class certification motion. *E.g.,* *Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2[d] Cir. 1978) ("[A trial] court should defer decision on certification pending discovery if the existing record is inadequate . . . .  Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is held."); *Daniels v. Amerco*, 1982 WL 1856, *1 (S.D.N.Y. 1982) (staying ruling on pending class certification motion because the parties needed discovery to develop a full record upon which the court could make class certification ruling); *Clark v. Sprint Spectrum L.P.*, 2011 WL 835487, *2 (C.D. Cal. 2011) (granting motion for extension to file class certification motion where "discovery is in the early stages and the Rule 16 scheduling conference has not yet occurred. . ."); 3 *Newberg on Class Actions* § 7:16 (4th Ed.) ("Apart from the disposition of various motions, class rulings are often deferred pending certain events such as discovery on class issues. . . .").

In this case, permitting the parties to conduct discovery would serve the salutary purpose of enabling them to develop proof regarding such matters as the actual number of persons to whom Defendants sent faxes throughout the United States (relevant to Classes A and B) and specifically in Connecticut (relevant to Class C), as well as regarding the numbers of faxes sent to such groups of persons.  In addition, discovery would reveal whether, and to what extent, any fax recipients may have consented to receiving Defendants' fax advertisements (relevant to proposed Classes B and C).  Further, discovery should confirm the universe of content on

Defendants' fax advertisements, including the content of the opt-out notices Defendants used on those faxes.  These types of information are typically in the hands of Defendants or their agents in junk fax cases, and hence are fully appropriate for class discovery.  Accordingly, this Court has legal authority and good cause to defer further consideration of this class certification motion until after the parties have had an adequate time to conduct discovery in this action.

## III.   IN THE ALTERNATIVE, THIS COURT SHOULD CERTIFY PLAINTIFFS' THREE PROPOSED CLASSES

Even if this Court were not inclined to postpone its consideration of Plaintiffs' motion for class certification, the proposed Classes should be certified.  As an initial proposition, the Court should ordinarily resolve any doubts regarding the propriety of certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing. *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); *accord*, *In re Folding Cartons Antitrust Litigation*, 75 F.R.D. 727 (N.D. Ill. 1977).  In the consumer context, this pro-class certification bias is particularly important because class actions are essential to enforcing consumer protection laws:

> In a large and impersonal society, class actions are often the last barricade of consumer protection. . . .  The alternatives to the class action-private suits or governmental actions-have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective.  The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

*Eshaghi v. Hanley Dawson Cadillac Co*, 214 Ill.App.3d 995, 1004, 574 N.E.2d 760, 766 (Ill. App. Ct. 1991).

As demonstrated below, Plaintiffs' three proposed classes should be certified because they meet all of the requirements set forth in Federal Rules of Civil Procedure 23(a) & (b)(3), namely, "numerosity," "commonality," "typicality" and "adequacy" are present; common

questions predominate over any individual questions; and a class action is superior to other methods for adjudicating this controversy.

### A.     Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient."  *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002).  It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).  The court may "make common sense assumptions in order to find support for numerosity."  *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983);  2 *Newberg on Class Actions* (3d ed. 1992), § 7.22.A ("Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable").

In this case, from the nature of the services advertised in Defendants' fax advertisements it is highly likely that Defendants sent fax advertisements just like the ones they sent Plaintiffs to thousands of persons during the over four-year period covered by the Complaint.  That is because Defendants' fax ads tout their ability to mediate recipients' insurance claims against extremely large insurance companies – "Liberty Mutual," "Progressive Insurance," and "Nationwide Insurance," in the case of the ads sent to Plaintiffs (Kaye Decl., Exh. A) – companies that are highly likely to each have many thousands of claimants filing insurance claims with them.  Accordingly, it is an eminently "common sense assumption" that Defendants sent the fax advertisements at issue to more than 40, and indeed to thousands of, persons,

although Plaintiffs need discovery to obtain more specific evidence of all of the foregoing numbers.

>    **B.**    **Rule 23(a)(2) – Commonality – and Rule 23(b)(3) – Common Questions of Law or Fact Predominate**

Rules 23(a)(2) requires that the Court determine whether "there are questions of law or fact common to the class."  This commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).  Rule 23(b)(3) further requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.  *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987).

Apropos to cases involving fax blasting such as this one, the "common questions" may be the existence and legality of a standard business practice.  *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 774 (N.D. Ill. 1989); *Haywood v. Superior Bank*, 244 Ill.App.3d 326, 614 N.E.2d 461, 464 (Ill. App. Ct. 1993).  Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met."  *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

In this case, there are numerous questions of law and fact common to Class A that predominate over any questions affecting only individual class members.  Those common questions include:

(a) whether Defendants' using an opt-out notice identical or substantially similar to the Opt-Out Notice in the fax advertisements sent to Plaintiffs and the members of Class A violated the TCPA;

(b) whether Defendants' sending those fax advertisements in violation of the TCPA to Plaintiffs and the members of Class A was knowing or willful;

(c) whether Plaintiffs and the members of Class A are entitled to fixed, statutory damages of $500 for each fax ad sent, triple damages and costs; and

(d) whether Plaintiffs and members of Class A are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct.

Similarly, there are questions of law and fact common to Class B that predominate over any questions affecting only individual class members. The predominant common questions include:

(a) Whether Defendants' sending to Plaintiffs and the members of Class B, without Plaintiffs' or the Class B members' express invitation or permission, fax advertisements containing a notice identical or substantially similar to the Opt-Out Notice violated the TCPA;

(b) whether Defendants' sending those unsolicited fax advertisements in violation of the TCPA to Plaintiffs and the members of Class B was knowing or willful;

(c) whether Plaintiffs and the members of Class B are entitled to fixed, statutory damages of $500 for each fax ad, triple damages and costs for Defendants' conduct; and

(d) whether Plaintiffs and members of Class B are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct.

12

Finally, and again similarly, there are questions of law and fact common to Class C that predominate over any questions affecting only individual class members. The predominant common questions include, but are not limited to:

(a) Whether Defendants' sending Plaintiffs and the members of Class C, without Plaintiffs' and the Class C members' express invitation or permission, fax advertisements violated Conn. Gen. Stat. Ann. § 52-570c(a);

(b) whether Plaintiffs and the members of Class C are entitled to fixed, statutory damages of $500 for each fax ad sent; and

(c) whether Plaintiffs and members of Class C are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct.

In response to this showing, Defendants may argue that the Court will have to engage in an individualized inquiry as to whether each class member in Classes A and B had an "established business relationship," as that defense is defined in the TCPA, with Defendants; and they may further argue that the Court will have to engage individualized inquiry into whether each member of Classes B and C provided "express invitation or permission," as defined in the TCPA  and Connecticut statute, to Defendants to send such fax ads.  Those arguments are unavailing for several reasons.

First, and most all-encompassing, numerous courts have held that the possible existence of such consent-related defenses are either insufficient to defeat class certification, *e.g.*, *CE Design v. Beaty Const., Inc.,* 2009 WL 192481 **8-9 (N.D. Ill. 2009) (citing cases), *Display South, Inc. v. Graphics House Sports Promotion, Inc.*, 992 So.2d 510, 520-21 (La. App. 2008), or that common proof applicable to the class developed during class discovery can defeat such

defenses, *e.g., Kavu, Inc. v. Omnipak Corporation*, 246 F.R.D. 642, 647 (W.D. Wash. 2007), *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 327-28 (5th Cir. 2008).[2]  Accordingly, to the extent that Defendants might be able to assert such defenses, the existence of those defenses does not require this Court to deny class certification.

Second, as to Class A, which addresses unsolicited and solicited faxes with opt-out notices identical or substantially similar to the defective opt-out notices on the fax advertisements Defendants sent to Plainitffs, the defenses of "established business relationship" and "express invitation or permission" do not apply in the first place.  That is because fax advertisements that either lack an opt-out notice entirely or have an opt-out notice that does not contain all of the elements required by the TCPA and the regulation promulgated thereunder violate the TCPA, irrespective of whether the fax advertisements are unsolicited or solicited, and irrespective of whether the recipients have or do not have an established business relationship with the defendant.  *E.g., Bais Yaakov of Spring Valley v. Alloy, Inc.*, -- F. Supp.2d --, 2013 WL 1285408, *11-*13 (S.D.N.Y. 2013) (defendant's failure to include required opt-out notice in fax advertisement sent to person who had previously consented to receiving fax advertisements is actionable under the TCPA); *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 560-61 (C.D. Cal. 2012) (court certifies class of recipients faxes lacking proper opt-out notices, finding that "Defendant's focus on the fact that it had an established business relationship with, possibly,

---

[2] Even if there were no common proof regarding the defense of consent, "this [would] not compel a finding that individual issues predominate over common ones" for Classes B and C. *Brown v. Kelly*, 609 F.3d 467, 483 (2nd Cir. 2010) (internal quotations marks and brackets omitted). "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3)." *Id.* (internal quotation marks omitted).  Thus, at this juncture, before Plaintiffs have had any opportunity to obtain any discovery, it would be improper to deny certification of Classes B and C even if there were no common proof regarding absence of consent, as discovery may very well uncover additional common questions that predominate over any individual defenses regarding consent.  *Id.* at 484-85.

every single recipient is immaterial to the real issue . . . whether the opt-out notices on the faxes were deficient"); *Ketch, Inc.* v. *Heubel Material Handling Inc.,* 2011 WL 1807329, *1 (W.D. Okla. 2011) (fax advertisements lacking proper opt-out notices actionable under TCPA, whether or not solicited); 47 U.S.C. § 227(b)(1)(C)(i), (b)(1)(C)(iii) (requiring, as one of three indispensable elements for asserting the "established business relationship" defense, that "the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D) [which in turn describes the required opt-out notice]").

Third, as to Class B, which is a subset of Class A addressing only *unsolicited* faxes containing an opt-out notice identical or substantially similar to the defective opt-out notices on the fax advertisements Defendants sent to Plaintiffs, the established business relationship defense is unavailable for the same reason that it is inapplicable to Class A:  because under the TCPA statute, fax advertisements that either lack an opt-out notice entirely or have an opt-out notice that does not contain all of the elements required by the TCPA and the regulation promulgated thereunder, forecloses a party from using the established business relationship as a defense under any circumstances.

Fourth, as to Class C, which consists of unsolicited faxes sent to Connecticut, the defense of established business relationship is irrelevant simply because the Connecticut anti-fax statute does not recognize any such defense.  *See* Conn. Stat. Ann. 52-570c(a).  In fact, the statute makes clear that that defense is applicable only to advertising material sent by electronic mail. *See* Conn. Stat. Ann. § 52-570c(b)(3)(C) (defense of prior existing business relationship applies only "for the purposes of this subsection," which subsection deals with unsolicited advertising material in electronic mail.).

15

In short, even at this early juncture, there are plenty of common issues of law and fact warranting class certification.   Moreover, any argument by Defendants that an established business relationship defense precludes class certification is unavailing because Defendants cannot assert that defense to any of the claims of the three proposed Classes.   Further, even as to issues regarding consent that may be germane to Classes B and C, those issues are not sufficient to defeat class certification, and in any event Plaintiffs may be able to obtain proof through discovery that Defendants had a business practice of blasting all of their faxes without obtaining consent of anyone.

### C.    Rule 23(a)(3) – Typicality

Rule 23 requires that the claims of named plaintiffs be typical of the claims of the classes:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.   The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.   Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). This inquiry "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993).

In this case, typicality is inherent in the Class A's definition.   By definition, each of Class A's members has been subjected to the same practice as the named Plaintiffs:   they are all persons to whom Defendants sent at least one unsolicited or solicited fax advertisement containing a purported opt-out notice substantially similar or identical to that contained on the Fax Advertisements sent to Plaintiffs.

16

So too is typicality inherent in the Class B's definition.  By definition, each of Class B's members has been subjected to the same practice as the named Plaintiffs:  they are all persons to whom Defendant sent at least one unsolicited fax advertisement containing a purported opt-out notice substantially similar or identical to that contained on the Fax Advertisements.

Finally, typicality also is inherent in Class C's definition.  By definition, each of Class C's members has been subjected to the same practice as the named Plaintiffs:  they all are persons whom Defendants sent at least one unsolicited fax advertisement in the State of Connecticut.

Accordingly, all three Classes are defined in such a way as to make the named Plaintiffs' claims typical of, and indeed essentially identical to, the claims of all three of those Classes.

### D.      Rule 23(a)(4) – Adequacy of Plaintiffs as Class Representative

Whether a proposed class plaintiff is able to adequately represent a class involves consideration of two factors:  (1) whether the proposed representative is credible and has an adequate knowledge of and activity in the case, *e.g., Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp.2d 602, 626-27 (S.D.N.Y. 2010), *citing Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949); and (3) the plaintiff must not have interests antagonistic to those of the class members, *e.g., Andrews v. Bechtel Power Corp.*, 785 F.2d 124, 130 (1st Cir. 1985); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).   "'Absent any conflict between the interests of the representatives and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'" *In re Playmobil Antitrust Litigation*, 35 F. Supp.2d 231, 243 (E.D.N.Y. 1998) (citation omitted).

Plaintiffs are credible and have an adequate knowledge of and activity in this case

because Plaintiffs sought out legal representation and obtained experienced counsel in this matter.  Kaye Decl., ¶ 4; Bellin Decl., ¶ 6.  Moreover, Plaintiffs have been actively involved in discussing the facts underlying this case with counsel, providing counsel with materials supporting their claims, discussing strategy with counsel, and reviewing the Complaint filed in this action.  *Id.*

Further, Plaintiffs' interests are not in any way antagonistic to, or in conflict with, the interests of the Classes' members.  Specifically, Plaintiffs are not aware of any conflicts between them and any of the class members, and Plaintiffs have no ownership interest in any of Defendants.  Kaye Decl. ¶ 5.  Given the essentially identical nature of the claims of Plaintiffs and of the members of the Classes, Plaintiffs' interests and those of the Classes are aligned, and one and the same.  Accordingly, Plaintiffs will be more than adequate class representatives.

### E.      Rule 23(b)(3) – a Class Action is Superior to Other Available Methods of Resolving this Controversy

Rule 23(b)(3) articulates a non-exclusive list of factors pertinent to the Court's finding whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy:

> (A) the interest of class members' individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability or concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in managing a class action.

As to the first factor, the interest of class members in individually controlling the prosecution of separate claims is minimal because generally, class members are unaware of their rights and because the small amount of statutory damages available to each individual under the TCPA and the Connecticut statute makes it unlikely that they will bring individual actions.  As

the Court observed in *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976), "one of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." Another court similarly explained:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. . . . "typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.". . . The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994) (citations omitted); *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) ("A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. . . . In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .).

As to the second factor, Plaintiffs' counsel knows of no class members who have brought similar claims, and to Plaintiffs' counsel's knowledge none have been filed with this Court. Bellin Decl., ¶ 8. Accordingly, there is no other pending litigation to consider as a possible reason for finding this class action inferior. The lack of any other litigation also dispenses with any concerns about certifying the classes in consideration of the third factor, involving concentration of claims in one forum – because no other forum has been used. Indeed, if the recipients of Defendants' fax advertisements realize that they have claims and do not collectively assert their claims in one class action, the result would be a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Green v. Wolf Corp.*,

406 F.2d 291, 301 (2nd Cir. 1968), *cert. denied*, 395 U.S. 977 (1969).   Plainly, it is more desirable to have all of the claims concentrated in this single forum.

As to the fourth and final factor, whether there would be difficulty managing the classes, that factor gives no reason for concern in this case.   Although the Classes appear to number in the thousands, Plaintiffs' attorneys' experience in suits of this kind and class actions generally (as discussed the next section of this memorandum) speaks to their ability to manage the Classes. Moreover,

> management difficulties, like other superiority factors, must be judged in comparison to the fairness and efficiency of other available methods for adjudicating the controversy.   Because [ascertainment of class members is] unique to class actions, any management difficulties in connection with class notice must be viewed not in isolation, but rather from the perspective of whether such [superiority problems] negate the advantages of unitary adjudication from a class action.

2 H. Newberg, *Newberg on Class Actions* ( 4th Ed. 2002), § 4:35.   Because the only realistic alternative to a class action in this case is for there to be little or no adjudication of the Classes' claims, a class action is plainly the superior means of adjudicating all of those claims.

### F.     Rule 23(g) – The Attorneys Seeking to Represent the Classes Satisfy the Requirements of Rule 23(g)

Finally, should the Court certify the proposed Classes and appoint Plaintiffs as class representatives, the Court must also appoint counsel pursuant to Rule 23(g)(l).   In pertinent part, that rule requires consideration of

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).   There is a general presumption of such competence for all members of the bar in good standing unless evidence to the contrary is adduced.   *E.g., Hertz v. Canrad*

*Precision Industries, Inc.*, No. 69 CIV 174, 1970 WL 236, *1 (S.D.N.Y. 1970) ("Plaintiffs' counsel are experienced in the area of law involved in this case.  Until the contrary is clearly demonstrated, we will assume that members of the bar are skilled in their profession. . . . In point of fact, we find substantiation of the skill of plaintiffs' counsel in the papers submitted to this Court on the instant motion."); *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1012 (Bankr. E.D.N.Y. 1986) (same).

In this case, Attorney Bellin has discussed the case with Plaintiffs, has researched possible claims by Plaintiffs and the Classes, has drafted the Complaint, and has drafted the initial draft of this motion.  Bellin Decl. ¶ 6.  In addition, Attorney Bellin has consulted with his co-counsel, Attorney Furman, concerning this case, and Mr. Furman reviewed the Complaint and drafted portions of and revised this motion.  Bellin Decl. ¶ 7; Furman Decl., ¶ 5.  Between the two of them, these attorneys have more than 50 years of experience in complex federal and state court litigation, including experience representing plaintiffs as well as defendants in class actions, and experience specifically in TCPA class action litigation.  Bellin Decl., ¶¶ 4-6; Furman Decl., ¶ 5.  Further, both attorneys do not have any interests that might cause them not to vigorously pursue this action.  Bellin Decl. ¶ 8; Furman Decl. ¶ 6.  Accordingly, Attorney Bellin and Attorney Furman more than qualify as competent class counsel pursuant to Rule 23(G)(1)(A).

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court take this motion under submission, and stay any further activity on this motion until after the discovery cutoff date it sets in its scheduling order and after the parties can file papers informed by their discovery on this motion.  In the alternative, Plaintiffs request that the three proposed Classes be

certified, that Plaintiffs be appointed the representatives of the Classes, and that Aytan Y. Bellin

of Bellin & Associates LLC and Roger Furman, Esq. be appointed as counsel for the Classes.

Dated: White Plains, New York
         May 8, 2013

                                        Respectfully submitted,

                                        BELLIN & ASSOCIATES LLC

                                        /s/Aytan Y. Bellin
                                        By: Aytan Y. Bellin, Esq. ct28454
                                        Attorneys for Plaintiffs' and the
                                              Proposed Classes
                                        85 Miles Avenue
                                        White Plains, New York 10606
                                        Tel: (914) 358-5345
                                        Email: aytan.bellin@bellinlaw.com

                                        Roger Furman, Esq. (motion for admission
                                              *pro hac vice* pending)
                                        Attorneys for Plaintiffs and the
                                              Proposed Classes
                                        7845 Henefer Avenue
                                        Los Angeles, California 90045
                                        Tel: (310) 568-0640
                                        Fax: (310) 694-9083
                                        Email: roger.furman@yahoo.com