# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROGER H. KAYE et al., | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-347 (JCH) |
| v. | : | |
| | : | MAY 28, 2014 |
| AMICUS MEDIATION & ARBITRATION | : | |
| GROUP, INC. et al., | : | |
| Defendants. | : | |

## AMENDED RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 58) AND PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION (Doc. No. 60)[1]

## I.   INTRODUCTION

Plaintiffs Roger H. Kaye and Roger H. Kaye, MD PC (collectively, "plaintiffs")

bring this action against defendants Amicus Mediation & Arbitration Group, Inc.

("Amicus") and Hillary Earle (collectively, "defendants") on behalf of themselves and all

others similarly situated.  Plaintiffs' Complaint (Doc. No. 1) sets out three classes:  it

alleges violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §

227, with respect to two classes and violations of state law, Conn. Gen. Stat. § 52-570c,

with respect to the third.

Pending before the court are plaintiffs' Amended Motion for Class Certification

and defendants' Motion to Dismiss.  For the reasons set forth below, plaintiffs' Motion

(Doc. No. 60) is **GRANTED**, and defendants' Motion (Doc. No. 58) is **DENIED**.

---

[1] The court discovered that the Conclusion of its Ruling (Doc. No. 86) stated erroneous docket numbers for the Motions.  The court regrets this oversight and has corrected the docket numbers in the Conclusion of the present Amended Ruling.

II.     **BACKGROUND**

A.      Individual Allegations

The Complaint alleges that the defendants sent unsolicited faxes to the named plaintiffs on six dates:  October 17, 2010; January 14, 2011; January 22, 2011; January 30, 2011; June 6, 2011; and June 25, 2011.  Compl. (Doc. No. 1) ¶¶ 10-11.[2]  Although these faxes included a note regarding how not to receive future faxes (the "Opt-Out Notice"), the Opt-Out Notice was allegedly defective in several respects.  Id. ¶¶ 12-13. Specifically, the Opt-Out Notice allegedly lacked at least five items required by the TCPA: (1) a telephone number to call in order to opt out of receiving future faxes, id. ¶ 13(B); (2) a fax number for that same purpose, id. ¶ 13(C); (3) a statement that, to be effective, an opt-out request must identify the fax number to which the request is related, id. ¶ 13(D); (4) a statement that the sender's failure to comply with an opt-out request within thirty days is unlawful, id. ¶ 13(E); and (5) a statement that a proper opt-out request remains effective unless the sender receives an express invitation or express permission subsequent to that request, id. ¶ 13(F).

B.      Class Allegations

Plaintiffs allege that, between March 2009 and March 2013, when the Complaint was filed, defendants sent over five thousand fax advertisements to thousands of persons in the United States that contained a notice identical or substantially similar to the Opt-Out Notice in the fax advertisements received by the named plaintiffs, id. ¶ 15; that, during this same period, defendants sent over five thousand fax advertisements to thousands of persons in the United States that were, like the fax advertisements sent to

_____

[2] Plaintiffs attached to the Complaint copies of seven fax advertisements, two sent on the same day, January 30, 2011.  See Ex. A to Compl. (Doc. No. 1-1).

2

the named plaintiffs, unsolicited, id. ¶ 16; and that, from March 2011 to March 2013, defendants sent thousands of unsolicited fax advertisements to thousands of persons in Connecticut, id. ¶ 17.

Accordingly, the Complaint sets forth three putative classes—Classes A, B, and C—on whose behalf the named plaintiffs bring this action.  Class A would comprise all persons to whom the defendants sent fax advertisements containing a notice identical or substantially similar to the Opt-Out Notice between March 2009 and March 2013.  Id. ¶ 19.  Class B would comprise all persons to whom the defendants sent fax advertisements that were unsolicited during that same period.  Id.  Class C would comprise all persons in Connecticut to whom the defendants sent unsolicited fax advertisements from March 2011 to March 2103.  Id.

Plaintiffs seek statutory damages on each of these claims, an injunction prohibiting the defendants from future violations, and costs and attorney's fees.

C.    Class-Related Discovery

Defendants faxed the alleged advertisements at issue in this case through a service called Rapid Fax offered by the company Data on Call.  Pls.' Ex. C (Doc. No. 62-5), Defs.' Resp. to Interrog. No. 24 ("Defendant uses Rapid Fax as its online faxing service and has utilized Rapid Fax during all relevant times at issue in this action").  Rapid Fax allows users to log onto their internet account, choose numbers to which to send a particular fax, fill out a cover sheet, upload a file, and click send.  Although the defendants are unable to determine from their records the precise number of alleged fax advertisements sent to persons in the United States between March 2009 and March 2013, they admit to sending over a thousand such advertisements.  Pls.' Ex. F (Doc. No. 62-8), Earle Dep. 137:7-22.  Defendants also admit that these faxes contained

3

either no opt-out notice or one identical or substantially similar to the Opt-Out Notice on the faxes received by the named plaintiffs.  Pls.' Ex. C, Resp. to Interrog. No. 13.

In the discovery to date, defendants have produced a directory of the names and contact information of persons to whom they sent faxes via Rapid Fax (the "Directory"). Bellin Decl. (Doc. No. 62) ¶ 3.[3]  In addition, Data on Call has produced a log of defendants' outgoing transactions via Rapid Fax from June 1, 2012 to March 14, 2013 ("Outgoing Transactions Log") as well as a log of the documents faxed during that period ("Outgoing Documents Log").   Pls.' Exs. H & I.  The Outgoing Transactions Log shows a series of identical one- or two-page faxes sent in batches within minutes of one another.  Pls.' Ex. H.  During the period covered by the logs from Data on Call, defendants sent 4,102 such faxes, including 649 to fax numbers with Connecticut area codes.  Id.; Bellin Decl. ¶¶ 8-9.  The Outgoing Documents Log identifies the file name of the document faxed for each of the transactions in the Outgoing Transactions Log and thereby confirms which faxes were sent to numerous recipients.  Pls.' Exs. H & I.  The file names are generally descriptive.  Pls.' Ex. I.

Defendant Amicus provides mediation and ADR services primarily for personal injury claims.  Earle Dep. 15:6-10, 17:6-10.  Defendant Earle founded and runs Amicus and, as pertinent here, was in charge of marketing its services.  Id. 19:8-10.  The alleged fax advertisements in this case consist of announcements of Amicus's mediation days, copies of which defendants have produced in discovery.  Pls.' Ex. B.

---

[3] Due to confidentiality, the Directory was not submitted in connection with plaintiffs' Amended Motion for Class Certification.  Bellin Decl. ¶ 3.  Defendants maintained, in fact, two accounts at Rapid Fax, with two corresponding directories, one devoted to Rhode Island, the other to non-Rhode Island contacts.  Earle Dep. 55:22-24, 56:15-19.  Because the court has not seen the Directory, it is not clear whether one or the other or a composite of the two was produced to plaintiffs.

Defendants sent these announcements, via Rapid Fax, to plaintiff-side attorneys in the Directory.  Id. 28:13-22.  Defendants obtained attorneys' fax numbers from various sources:  Martindale-Hubbell; online searches; insurance carriers and claims adjustors; and directories like the Connecticut Trial Lawyers Association ("CTLA"), in which the named plaintiffs' fax number was listed.  Pls.' Ex. C, Resp. to Interrog. No. 6.  In addition, defendants added to the Directory fax numbers of prior clients upon faxing a contract to those clients.  Earle Dep. 20:3-8, 39:25; 40:2-11.

Defendants disclaim having possession of other documentation of when and to whom they sent fax advertisements between March 2009 and March 2013, the period covered by Classes A and B.  Compl. ¶ 19.  Data on Call has produced continuous logs of defendants' outgoing fax activity only for the period from June 1, 2012 to March 14, 2013.  However, at the time of the filing of plaintiffs' Amended Motion for Class Certification, Data on Call had indicated that it would produce records of defendants' outgoing transactions, via Rapid Fax, on the six additional dates on which the named plaintiffs allegedly received fax advertisements from the defendants:  October 17, 2010; January 14, 2011; January 22, 2011; January 30, 2011; June 6, 2011; and June 25, 2011.  Bellin Decl. ¶ 7.  Data on Call has since produced these records, which show that defendants transmitted an additional 1,475 similar one- or two-page faxes on those six dates.  See Pls.' Reply (Doc. No. 80) at 20; Pls.' Ex. A to Pls.' Reply (Doc. No. 80-1).

D.    Procedural History

In May 2013, defendants moved to dismiss (1) the Class A claim to the extent that it involves solicited faxes, (2) the entirety of the Complaint as it pertains to defendant Earle, and (3) the Class B claim.  At that same time, which was less than two months after the filing of the Complaint and prior to discovery, plaintiffs moved

prophylactically for class certification in order to prevent an offer of judgment to the named plaintiffs from possibly mooting the class action.  Plaintiffs also moved to stay consideration of their Motion for Class Certification pending discovery.

On September 2, 2013, the court held oral argument on these motions.   For the reasons stated on the record, the court denied defendants' Motion to Dismiss, holding that solicited faxes may violate the TCPA if they contain defective opt-out notices, that the court has personal jurisdiction over Earle, and that the overlap between the Class A and Class B claims is not a basis for striking the Class B claim at the pleadings stage.

On September 9, 2013, the court denied plaintiffs' Motion to Stay but granted leave to make supplementary filings in support of class certification by December 16, 2013, on which date plaintiffs filed the instant Amended Motion for Class Certification. In March 2014, the court terminated plaintiffs' prior Motion for Class Certification as moot in light of the Amended Motion.

In September 2013, defendants served an offer of judgment (the "Offer") on the named plaintiffs pursuant to Rule 68 of the Federal Rules of Civil Procedure.  See Defs.' Ex. C to Defs.' Mot. to Dismiss ("Offer of J.") (Doc. No. 58-1) at 45-56.  On December 11, 2013, having made the Offer, which was not accepted within the 14-day window provided by Rule 68, defendants filed the instant Motion to Dismiss pursuant to Rule 12(b)(1).

E.    Offer of Judgment

Under the terms of the Offer, defendants would allow judgment to be taken against them in the amount of $16,500, plus costs and reasonable attorney's fees to be determined by the court.  Id. at 45.  As part of the Offer, the defendants agreed that they would enter into a stipulated injunction prohibiting them from committing future TCPA

violations.  Id.  Finally, the Offer stated that, to the extent such relief did not fully satisfy plaintiffs' claims, the defendants would provide "any other relief" deemed necessary by the court to award full satisfaction.  Id.

## III.   DISCUSSION

### A.   Motion to Dismiss

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the district court lacks the statutory or constitutional power to adjudicate the case.  Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013).  Although the court takes all facts alleged in the complaint as true, subject matter jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting jurisdiction.  Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir.2008).  Hence, on a Rule 12(b)(1) motion, the plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists. Id. (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000)).

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies.  Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013).  "A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  Id. (citation and internal quotation marks omitted).  Therefore, where "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot."  Id. (citation and internal quotation marks omitted).

Rule 68 states,

> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

Fed. R. Civ. P. 68(a).  In the case of an unaccepted offer, "if the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."  Fed. R. Civ. P. 68(d).  "The plain purpose of Rule 68 is to encourage settlement and avoid litigation."  Marek v. Chesny, 473 U.S. 1, 5 (1985); see also Symczyk, 133 S. Ct. at 1536 (Kagan, J., dissenting) ("Rule 68's exclusive purpose [is] to promote voluntary cessation of litigation by imposing costs on plaintiffs who spurn certain settlement offers.").

There is a split among the Circuits as to whether an unaccepted Rule 68 offer that fully satisfies a plaintiff's claims necessarily renders those claims moot.  Symczyk, 133 S. Ct. at 1528-29 & n.3; Cabala v. Crowley, 736 F.3d 226, 228 n.2 (2d Cir. 2013). In this Circuit, a plaintiff is not entitled to continue litigating if the defendant consents to judgment in the maximum amount for which the defendant could be held liable, regardless of any admission of liability, and regardless of whether the defendant consents to the entry of judgment by means of a written Rule 68 offer.  Cabala, 736 F.3d at 230; Doyle, 722 F.3d at 80; McCauley v. Trans Union, LLC, 402 F.3d 340, 341 (2d Cir. 2005).  In such a case, mootness follows from the fact that the defendant could simply choose not to appear and thereby suffer the court to enter default judgment against him.  McCauley, 402 F.3d at 341-42.  While the Circuits have also split as to the proper manner of disposing of such cases, the practice directed by the Second Circuit is

to enter judgment for the plaintiff on the terms of the unaccepted offer. <u>Cabala</u>, 736 F.3d at 228.

Rule 68 offers pose special concerns in the context of class actions. <u>See</u> 12 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 3001.1 (2d ed. 1997) ("There is much force to the contention that, as a matter of policy, the rule should not be employed in class actions. Class actions can only be settled with the approval of the court, and the judge is not required to acquiesce in the desire of the class representative that the case be settled."); 13 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 68.04[3] ("The language of Rule 68 contains no exception for particular kinds of actions. However, it is questionable whether the offer-of-judgment rule should apply to cases such as class or derivative actions that require judicial approval of a settlement."). Even courts that agree on the applicability of the offer-of-judgment rule to class actions differ as to the effect of Rule 68 offers relative to the timing of Rule 23 motions. <u>Compare, e.g.</u>, <u>Weiss v. Regal Collections</u>, 385 F.3d 337, 348 (3d Cir. 2004) (permitting relation back to the filing of the class complaint, absent undue delay in moving for certification), <u>with</u> <u>Damasco v. Clearwire Corp.</u>, 662 F.3d 891, 895 (7th Cir. 2011) ("[A] plaintiff cannot avoid mootness by moving for class certification after receiving an offer of full relief."). <u>See generally</u> <u>Comer v. Cisneros</u>, 37 F.3d 775, 798-801 (2d Cir. 1994) (discussing mootness exceptions in class certification context).

The procedural history of the instant case, in which plaintiffs first moved for class certification two months after filing the case and prior to any discovery, is explained by the absence of definitive guidance on these issues from the Supreme Court and the Second Circuit. This court is mindful of the dilemmas faced by plaintiffs in such cases

and of the potential for Rule 68 offers to undercut the viability of Rule 23 as a mechanism for aggregating small claims by "picking off" would-be class representatives. Vogel v. Am. Kiosk Mgmt., 371 F. Supp. 2d 122, 126-27 (D. Conn. 2005) (citing Weiss v. Regal Collections, 385 F.3d 337, 345 (3d Cir. 2004)).  However, despite the parties' extensive briefing on these unsettled questions, the court does not reach them because there is a preliminary dispute as to whether the Offer even fully satisfies plaintiffs' individual claims.  See Hrivnak v. NCO Portfolio Mgmt., Inc., 719 F.3d 564, 567 (6th Cir. 2013) ("An offer limited to the relief the defendant believes is appropriate does not suffice. The question is whether the defendant is willing to meet the plaintiff on his terms.").

This dispute regarding the damages recoverable on plaintiffs' individual claims suffices to satisfy Article III's case-or-controversy requirement, independent of any interest plaintiffs may have, at this stage, in representing the class.  Defendants assert that, even assuming willfulness, which entitles plaintiffs to treble damages under the TCPA, the maximum recovery for the seven faxes at issue—two of which fall within the two-year statutory period also covered by section 52-570c of the Connecticut General Statutes—is \$11,500 ((\$500 x 3 x 7) + (\$500 x 2)).  See Defs.' Reply (Doc. No. 73) at 22 n.8.  The Offer stipulates to entry of judgment for monetary damages in the amount of \$16,500, which plainly exceeds what defendants calculate to be the maximum available recovery.  Plaintiffs argue, however, that each fax violated eleven different statutory and regulatory requirements of the TCPA.  Hence, by plaintiffs' calculation, the maximum available recovery under the TCPA alone is \$115,500 (\$500 x 3 x 11 x 7).  While defendants may well prevail in their view of the law, this dispute as to whether multiple

statutory damages awards can be recovered for a single fax's multiple TCPA violations goes to the merits of plaintiffs' individual claims and the corresponding amount that would be necessary to satisfy these claims.  Success on the merits of these claims is not a jurisdictional fact to be found by the court in order to decide the instant Rule 12(b)(1) Motion.  Bell v. Hood, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."); see also Chafin v. Chafin, 133 S. Ct. 1017, 1024 (2013) ("[Plaintiff's] prospects of success are . . . not pertinent to the mootness inquiry.").[4]  However reasonable the Offer was or proves to have been, the disparity between its terms and the individual recovery sought by plaintiffs precludes a finding of mootness.  Hrivnak, 719 F.3d at 568.[5]

Having concluded that a live dispute remains, as required by Article III, the court denies defendants' Motion to Dismiss (Doc. No. 58).

---

[4] The court may reject a patently frivolous claim asserted as a basis for jurisdiction.  Hagans v. Lavine, 415 U.S. 528, 536 (1974) ("Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,' 'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion.'" (citations omitted)).  However, plaintiffs' argument here is not so insubstantial as to deprive this court of jurisdiction.  Plaintiffs' ability to recover statutory damages for certain regulatory violations as well as to recover multiple such awards for multiple violations in connection with a single fax is not clear on the face of the TCPA, and the parties cite conflicting authority on these subjects.  See Pls.' Opp'n to Defs.' Mot. to Dismiss (Doc. No. 70) at 24-25; Defs.' Reply (Doc. No. 73) at 19-21.

[5] Although the Offer also provides for injunctive relief, costs and attorney's fees, and any other relief deemed necessary by the court to award full satisfaction of plaintiffs' individual claims, Offer of J. at 45, these additional terms do not alter the result.  The court's calculation of costs and reasonable attorney's fees may not involve any substantive determination on the merits.  That provision, however, does not moot the dispute as to statutory damages, nor does the catchall provision of "any other relief." Indeed, the latter provision cannot be the basis for finding mootness, because the court would have to resolve plaintiffs' claims on the merits in order to give content to the "other relief" to which plaintiffs are entitled that was missing on the face of the Offer.

B.      Amended Motion for Class Certification

      1.      Class Definitions

Plaintiffs seek certification of the following three classes:

Class A:  All persons to whom defendants sent or caused to be sent a fax advertisement containing a notice identical or substantially similar to the Opt-Out Notice from June 1, 2012 through March 14, 2013, or on October 17, 2010, January 14, 2011, January 22, 2011, January 30, 2011, June 6, 2011 or June 25, 2011.

Class B:  All persons to whom defendants sent or caused to be sent an unsolicited fax advertisement during the period or on the dates covered by Class A.

Class C:  All persons in Connecticut to whom, without having obtained express invitation or permission, defendants sent or caused to be sent a fax advertisement from June 1, 2012 through March 14, 2013 or on June 6, 2011 or June 25, 2011.

See Pls.' Mem. in Supp. of Pls.' Am. Mot. for Class Certification ("Pls.' Mem.") (Doc. No. 61) at 19-20.[6]  Class A is defined to cover fax advertisements alleged to violate the TCPA because of defective opt-out notices.  Class B is defined to cover fax advertisements alleged to violate the TCPA because they were unsolicited.  Class C is defined to cover fax advertisements alleged to violate section 52-570c of the Connecticut General Statutes because they were sent to Connecticut recipients without those recipients' express consent.

      2.      Plaintiffs' Burden Under Rule 23

Certification of Classes A, B, and C is appropriate only if the court is satisfied, "after a rigorous analysis," that each proposed class meets the Rule 23(a) prerequisites.

---

[6] The class definitions here differ from those in the Complaint, in that plaintiffs have narrowed the range of dates covered to conform to the records of defendants' fax activity produced by Data on Call.  It is well settled that courts may modify or subdivide classes as issues develop for trial.  Woe by Woe v. Cuomo, 729 F.2d 96, 107 (2d Cir. 1984).  Hence, the court has addressed the propriety of certification on the basis of these modified class definitions, as set forth in plaintiffs' Amended Motion for Class Certification, Pls.' Mem. at 19-20, and not as set forth in the Complaint, Compl. ¶ 19.

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); see also In re Initial Pub.

Offerings Sec. Litig., 471 F.3d 24, 40 (2d Cir. 2006) [hereinafter "IPO"] ("[A] district court

may not grant class certification without making a determination that all of the Rule 23

requirements are met.").  Thus, Classes A, B, and C may proceed only if, for each

proposed Rule 23 class,

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class, (3) the claims
> or defenses of the representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

If the court determines that these threshold requirements—numerosity,

commonality, typicality, and adequacy of representation—are satisfied, Classes A, B,

and C must then qualify under one of the three Rule 23(b) criteria.  In the instant case,

where certification is sought pursuant to Rule 23(b)(3), the court must determine that

"the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The party seeking class certification bears the burden of establishing by a

preponderance of the evidence that each of Rule 23's requirements has been met."

Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).  A court must "receive enough

evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23

requirement has been met."  IPO, 471 F.3d at 41.  In determining whether a putative

class meets the requirements of Rule 23, the court must resolve any factual disputes,

and find any facts relevant to this determination.  Id.  The court's obligation to make

such determination "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." Id.

        3.      Implied Requirement of Ascertainability

Implied in Rule 23 is a requirement that there be a "class." 7A Charles Wright et al., Federal Practice and Procedure § 1760 (3d ed. 2005); see also IPO, 471 F.3d at 30 (referring to the "implied requirement of ascertainability"). But cf. Floyd v. City of New York, 283 F.R.D. 153, 171 (S.D.N.Y. 2012) ("Rule 23 does not demand ascertainability. The requirement is a judicial creation meant to ensure that class definitions are workable when members of the class will be entitled to damages or require notice for another reason."). Although class members need not be ascertained prior to certification, membership for a Rule 23(b)(3) class must be ascertainable at some point. In re Methyl Tertiary Butyl Ether Products Liab. Litig., 209 F.R.D. 323, 337 (S.D.N.Y. 2002). "An identifiable class exists if its members can be ascertained by reference to objective criteria." Id. (citation and internal quotation marks omitted). That is, "the class description must be sufficiently definite so that it is administratively feasible for the [c]ourt to determine whether a particular individual is a member of the proposed class." Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50, 53 (D. Conn. 2004). "This standard is not a demanding one, but is designed only to prevent the certification of a class whose membership is truly indeterminable." Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 293 F.R.D. 287, 299 (E.D.N.Y. 2013) (citation and internal quotation marks omitted).

Defendants argue that identifying members of Classes A, B, and C will require mini-trials on the merits because, for any given recipient of a fax from the defendants, class membership depends, first, on whether the fax qualifies as an advertisement and,

second, on whether the recipient consented to receive fax advertisements or otherwise had an established business relationship with the defendants.  See Defs. Opp'n to Pls.' Am. Mot. for Class Certification ("Defs.' Opp'n") (Doc. No. 75) at 21.  The court disagrees and determines that Classes A, B, and C are sufficiently ascertainable for purposes of preliminary certification.

With respect to the content of the faxes, which implicates all three classes, whether a given fax was an advertisement is ascertainable on the basis of the Directory, the Outgoing Transactions Log, and the Outgoing Documents Log.  In particular, recipients of fax advertisements are reasonably identifiable in light of:  (1) the contact information in the Directory; (2) the series of repeated one- and two-page faxes to persons in that Directory within minutes of one another; (3) the same documents sent to multiple recipients on such occasions; (4) the descriptive file names of these documents; and (5) the corresponding fax announcements concerning one of defendants' mediation days.   Defendant Earle testified, in fact, that the only mass faxes sent out in this manner were faxes for mediation days, Earle Dep. 124: 22-125:2, and that she had no alternative explanation for this pattern of outgoing faxes, id. 121:6-23. Accordingly, members of Classes A, B, and C can be preliminarily ascertained by reference to receipt of a mass fax sent by defendants during the period covered by the respective class and, in the case of Class C, by reference to the Connecticut area code of the fax number.

With respect to consent, which implicates Classes B and C, plaintiffs have put forward evidence that defendants obtained attorneys' fax numbers for the Directory by a variety of means, including directories from Martindale-Hubbell and CTLA, online

searches, insurance companies, claims adjusters, and prior relationships with recipients. Pls.' Ex. C, Resp. to Interrog. No. 6; Earle Dep. 20:3-8, 39:25; 40:2-11. This variety poses challenges to certification that are addressed by the court under the inquiries into commonality, typicality, and predominance. See Parts III.B.4.b & III.B.5.a, infra. As explained below, Classes B and C may be certified only as to persons whose fax numbers the defendants obtained through the CTLA directory, which subclass includes the named plaintiffs. While defendants' Directory and the CTLA directory are not before the court, the former is in plaintiffs' possession, and the latter, if not already in plaintiffs' possession, is easily discoverable. Hence, while the court itself has not examined these databases, it sees no reason why the specified subclasses of Classes B and C cannot be "reverse-engineered" by comparing the Directory, the CTLA directory, and the Outgoing Transactions Log.

                4.     Rule 23(a) Requirements

                       a.     Numerosity

"The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed for a class in excess of forty members. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). However, "evidence of exact class size or identity of class members" is not required, Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993), and the court may rely on reasonable inferences drawn from available facts, Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004).

As to Class A, evidence supports that 5,577 mass faxes were sent, 4,102 between June 2012 and March 2013, 1,475 on the six additional dates on which plaintiffs received such faxes.  Pls.' Reply at 20.  If not the same size as Class A, Class B is in that ballpark.  The most restrictive class, Class C, has at least 649 members.

As explained below, see Parts III.B.4.a & 5.b, infra, the court will certify Classes B and C only as to persons whose fax numbers the defendants obtained through the CTLA directory, because plaintiffs' claims are typical and entail common inquiries that predominate over individual inquiries only relative to such persons.  However, in this connection, it bears noting that CTLA is not a small organization.  See CTLA website, http://www.cttriallawyers.org ("We are a fellowship of over 1,300 of Connecticut's most accomplished and active lawyers.").  Thus, common sense suggests that restricting Classes B and C to persons whose fax numbers were obtained through the CTLA directory is unlikely to reduce the subclasses to be certified to sizes below the threshold of forty.

  b.  Commonality and Typicality

"The commonality and typicality requirements often 'tend to merge into one another, so that similar considerations animate analysis' of both."  Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010) (quoting Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)).  "The crux of both requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Marisol A., 126 F.3d at 376 (citation, alterations, and internal quotation marks omitted).  Commonality requires that "plaintiffs' claims 'depend upon a common contention . . . capable of classwide resolution.'"  Cuevas v. Citizens

Fin. Grp., Inc., 526 F. App'x 19, 21 (2d Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).  "Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members." Brown, 609 F.3d at 475 (citing Fed. R. Civ. P. 23(a)(3)).

As to Class A, commonality and typicality are easily met.  Defendants concede that, where their mass faxes included a notice regarding how to opt out of receiving future faxes, such notice was identical or substantially similar to the Opt-Out Notice contained in the faxes received by plaintiffs.  Pls.' Ex. C, Resp. to Interrog. No. 13. Hence, whether the Opt-Out Notice was defective is a question dispositive of liability and susceptible of being proven or disproven on a class-wide basis.

As to Classes B and C, however, the issue of consent is central, and proof of consent will likely vary based on the source from which defendants obtained attorneys' fax numbers—whether directories from Martindale-Hubbell and CTLA, online searches, insurance companies, claims adjusters, or prior relationships with recipients.  Thus, while consent poses a common question, which is determinative of liability as to both classes, generalized proof is lacking.[7]  Cf. Hinman v. M & M Rental Ctr., Inc., 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (certifying class of recipients whose fax numbers

---

[7] Whether consent is characterized as an element of plaintiffs' claim or an affirmative defense to it does not alter the conclusion that generalized proof of plaintiffs' claims is unavailable as to Classes B and C.  Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 327 (5th Cir. 2008); see also Myers, 624 F.3d at 551 (noting that individualized issues necessary to decide affirmative defense may preclude certification).  It bears remarking that, in BioPay and Myers, the Fifth and Second Circuits addressed the affirmative defenses at issue under Rule 23(b)(3)'s predominance requirement.  However, both cases were decided prior to the Supreme Court's decision in Dukes.  131 S. Ct. at 2566-67 (Ginsburg, J., dissenting) ("The Court blends Rule 23(a)(2)'s threshold criterion with the more demanding criteria of Rule 23(b)(3), and thereby elevates the (a)(2) inquiry so that it is no longer 'easily satisfied.' . . .  If courts must conduct a 'dissimilarities' analysis at the Rule 23(a)(2) stage, no mission remains for Rule 23(b)(3).").  This court is bound by Dukes, and in the wake of Dukes, this Circuit has likewise treated affirmative defenses on which defendants' ultimate liability will depend as proper subjects of the inquiries into commonality and typicality, as well as predominance.  Authors Guild, Inc. v. Google Inc., 721 F.3d 132, 135 (2d Cir. 2013) (citing, inter alia, Dukes).

were obtained from a singular source); <u>Kavu, Inc., v. Omnipak Corp.</u>, 246 F.R.D. 642, 646 (W.D. Wash. 2007) (same).  Unlike in <u>Hinman</u> and <u>Kavu</u>, defendants here had recourse to different types of sources to create the Directory they used in sending out mass faxes.  <u>Gene & Gene LLC v. BioPay LLC</u>, 541 F.3d 318, 329 (5th Cir. 2008) (reversing certification of class of recipients whose fax numbers defendant culled from various sources over time).  Accordingly, whether defendants ever obtained recipients' consent, or obtained consent from certain sets of recipients and not others, will entail separate inquiries into these heterogeneous sources.  Furthermore, while corresponding subclasses might be devised, plaintiffs' claims and the arguments for and defenses to them are typical only of recipients whose fax numbers were likewise obtained through the CTLA directory.

For those reasons, the lack of commonality and typicality precludes certification of Classes B and C as presently drawn.  In the court's view, however, the Rule 23(a) requirements of commonality and typicality are satisfied as to persons like plaintiffs whose fax numbers defendants obtained through the CTLA directory.  With respect to such persons, the question of whether listing one's number constitutes consent to receive fax advertisements is central to each person's claims and amenable to class-wide resolution.  Indeed, plaintiffs identify this question as one that is common to Classes B and C.  Pls.' Mem. at 23-24.  In so doing, plaintiffs have advanced "a viable theory employing generalized proof to establish liability," <u>albeit</u> not as to Classes B and C as a whole, but only as to the narrowly drawn subclasses, as to which common issues exist, and of which plaintiffs' claims and the possible defenses to them are, in fact, typical.  <u>BioPay</u>, 541 F.3d at 328.

Hence, with respect to Classes B and C, because commonality and typicality are met only as to members like plaintiffs whose fax numbers were obtained through the CTLA directory, the court will consider whether certification of these subclasses of Classes B and C is proper.

c.      Adequacy of Representation

In determining the adequacy of representation, courts seek to ensure (1) that the named plaintiffs' interests are not antagonistic to the interests of other class members and (2) that plaintiffs' counsel is qualified, experienced, and able to conduct the litigation. Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007). There is no question that plaintiffs' attorneys are well-qualified to prosecute this case. Defendants question only whether plaintiffs' interests are antagonistic to those of other class members, arguing that plaintiffs have failed to show other class members did not desire to receive faxes regarding defendants' services. Defs.' Opp'n at 22-23.

This argument is meritless, however. First, plaintiffs have no burden to make such a showing. Second, Rule 23(a)'s adequacy requirement is meant to ensure zealous advocacy for the class, not the opposite. Latino Officers Ass'n City of New York v. City of New York, 209 F.R.D. 79, 90 (S.D.N.Y. 2002). That defendants are worried plaintiffs will zealously prosecute this case supports rather than refutes adequacy. Whatever personal interest other class members may have in not prosecuting their own TCPA claims, such interest is not one to which plaintiffs' interest in vindicating claims common to the class can be characterized as "antagonistic" under Rule 23(a)(4).

As to Class A, all evidence suggests that plaintiffs' interests are aligned with those of the class. As to Classes B and C, it is always possible that plaintiffs' claims are

20

subject to a defense based on listing their fax number in the CTLA directory.  Whether

such defense might render plaintiffs' interests antagonistic to those of other members of

Classes B and C as originally drawn is, however, speculative.   At this point, there is no

evidence of defenses unique to plaintiffs which would render them ineffective class

representatives.  On the contrary, the record unequivocally indicates plaintiffs' strong

interest in prosecuting the claims of Classes B and C, as of Class A.  Moreover, as

limited to members whose fax numbers were obtained through the CTLA directory, <u>see</u>

Part III.B.4.b, <u>supra</u>, Classes B and C suffer no possible defect from the fact that the

lead plaintiffs listed their number in that same directory.  Indeed, that is what makes

plaintiffs <u>typical</u> of these subclasses.

In sum, the court finds that adequacy and the other Rule 23(a) requirements are

met with respect to Class A and with respect to the subclasses of Classes B and C

comprising the respective class members whose fax numbers, like plaintiffs', were

obtained through the CTLA directory.

### 5.    Rule 23(b)(3) Requirements

#### a.    Predominance

In addition to satisfying the four requirements of Rule 23(a), to qualify under Rule

23(b)(3), plaintiffs must show that, for each proposed class, "the questions of law or fact

common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3)

predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation."  <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S.

591, 623 (1997).  Although similar to commonality, predominance is "more demanding"

and "requires not only that there be disputed issues that can be resolved through 'generalized proof,' but also that 'these particular issues are more substantial than the issues subject only to individualized proof.'" Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 159 (S.D.N.Y. 2008) (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)).

As to Class A, the court determines that those questions central to liability and common to the class—namely, whether recipients received a fax advertisement, whether it contained defective notice regarding how to opt out from receiving future fax advertisements, and whether class members are entitled to statutory damages based on such defective notice—will predominate over any questions pertaining only to individual class members.   Indeed, the issue of whether the faxes were solicited or unsolicited is irrelevant to this class, as is the issue of whether defendants had an "established business relationship" with class members.   47 U.S.C. § 227(b)(1)(C) (exempting sender from liability for unsolicited fax advertisements to recipients with such relationship only if advertisement contains required opt-out notice).   Hence, the fact that the defendants obtained fax numbers from multiple sources, some of which may involve recipients' consent to the receipt of fax advertisements from defendants, has no bearing on the claims of Class A members.   See Vandervort v. Balboa Capital Corp., 287 F.R.D. 554, 562 (C.D. Cal. 2012) (certifying similar class); A Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC, No. 12-21695-CIV, 2013 WL 3463489, at *4 (S.D. Fla. July 3, 2013) (same).

As to Classes B and C, consent is central to the claim, and the lack of commonality and typicality—let alone predominance—precludes certification of these

22

two classes as originally drawn.  However, as limited to persons whose fax numbers defendants obtained through the CTLA directory, the court determines that common questions will predominate and that these subclasses are "sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623.

Of course, with respect to the specified subclasses, it is still possible that some recipients' fax numbers were obtained through multiple sources rather than the CTLA directory alone.  Such recipients' claims may be subject to separate defenses on that basis.  However, the mere possibility that some class members have claims subject to separate defenses is not a reason to deny certification.  Hinman, 545 F. Supp. 2d at 807; cf. Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir.1990) ("While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." (citations and internal quotation marks omitted)).  Moreover, although there is evidence that defendants used different sources, Pls.' Ex. C, Resp. to Interrog. No. 6, as well as evidence that some recipients invited fax communications from the defendants, Earle Dep. 110:4-22, the record contains no evidence of overlap between the sources used to compile defendants' Directory.  Cf. Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036, 1042 (9th Cir. 2012), cert. denied, 133 S. Ct. 2361 (U.S. 2013) (affirming provisional certification of class absent evidence of need for individualized inquiries based on consent).

Hence, predominance is satisfied not only as to Class A, but also as to the

identified subclasses of Classes B and C.  With respect to the specified subclasses of

Classes B and C, individual issues, if any, are merely speculative and insufficient to

undermine the predominance of the questions otherwise central to liability and common

to these subclasses.

              b.        Superiority

In assessing whether "a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy," Rule 23(b)(3) directs courts to

consider:

> (A) the class members' interests in individually controlling the prosecution
> or defense of separate actions; (B) the extent and nature of any litigation
> concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and (D) the likely difficulties in managing a
> class action.

Fed. R. Civ. P. 23(b)(3).  Superiority is often met where class members' claims would

be too small to justify individual suits, and a class action would save litigation costs by

permitting the parties to assert their claims and defenses in a single proceeding.

Amchem, 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind

vindication of the rights of groups of people who individually would be without effective

strength to bring their opponents into court at all."); Jermyn v. Best Buy Stores, L.P.,

256 F.R.D. 418, 436-37 (S.D.N.Y. 2009).

Here, the various Rule 23(b)(3) factors favor certification.  First, class members

have little or no interest in individually prosecuting separate actions.  Given the modest

statutory damages, individuals are unlikely to sue on their own, and given that the

relevant provisions are less than a decade old, class members may even "be unaware

of their legal rights."  See Kavu, 246 F.R.D. at 650.  Second, and relatedly, there is no indication of other TCPA actions against these defendants.  Bellin Decl. ¶ 8.  Thus, the present case will not interfere with pending litigation in other forums.  Third, the corresponding state-law claims make suit in the instant forum desirable.  Lastly, there are no potential difficulties in managing this case as a class action apart from the speculative need for individualized inquiries, which need the court has already addressed in connection with commonality, typicality, and predominance and determined to be unsupported by the record.  See Parts III.B.3, III.B.4.b & III.B.5.a, supra.

The parties' principal arguments for and against superiority are policy-based.  In the court's view, such arguments likewise favor certification.  Relying heavily on Forman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D. Pa. 1995), defendants argue that class actions are inappropriate under the TCPA in general, and that defendants' potential liability will be grossly disproportionate to the actual harm to class members.  See Defs.' Opp'n at 26-29.  Neither argument is availing.

As to the appropriateness of TCPA class actions, certainly there is no per se bar to resolving large numbers of TCPA claims by means of Rule 23.  BioPay LLC, 541 F.3d at 328.  While the availability of minimum statutory damages awards for violations already incentivizes private enforcement to some extent, the amount ($500) is still sufficiently modest relative to the burdens of litigation that suits would doubtless rarely be brought but for the possibility of aggregating similar claims.  Moreover, forcing claimants to sue separately would only serve to waste scarce judicial resources.  Hinman, 545 F. Supp. 2d at 807 ("[R]esolution of the issues on a classwide basis, rather

than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."). In other words, reliance on statutory damages awards alone to motivate individual litigants would lead to one of two suboptimal results—either "needlessly clogging the courts with repetitious suits if many are filed, or rewarding some law violators with liability for only a slight amount of total damages if, as seems more likely, few suits are filed." Parker v. Time Warner Entm't Co., L.P., 331 F.3d 13, 26 (2d Cir. 2003) (Newman, J., concurring).

As to the potential enormity of statutory damages, there may be a due process issue. Id. at 22 (majority opinion).[8] Even in a truly serious case, however, the remedy is not to decertify the class but to reduce the award. Id. And, in the instant case, there is as yet no liability, let alone damages. The proportionality of damages to the actual injury suffered by class members is, therefore, not properly before the court. For purposes of certification, the question is not the size of hypothetical damages. The question is whether issues related to plaintiffs' claims are better resolved on a class-wide basis. Because the court concludes that they are, and that the requirements of Rule 23 are met as to Class A and the narrowly drawn subsclasses of Classes B and C, certification of these classes is proper.

---

[8] The court is mindful that, just as many potential TCPA claimants may not sue out of ignorance of their legal rights, Kavu, 246 F.R.D. at 650, many TCPA violations may well arise out of ignorance of what the law requires. However, Congress has given courts discretion to take account of pertinent differences among violations in awarding damages. See 47 U.S.C. § 227(b)(3) ("If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [of actual or statutory damages, whichever is greater].").

6. Class Counsel

Where the court certifies a class under Rule 23, the court must appoint class

counsel.  In appointing counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential
> claims in the action; (ii) counsel's experience in handling class actions,
> other complex litigation, and the types of claims asserted in the action; (iii)
> counsel's knowledge of the applicable law; and (iv) the resources that
> counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  In light of the extensive work already done on this matter by

plaintiffs' counsel, Attorneys Aytan Y. Bellin and Roger Furman, in light of their obvious

expertise and experience in this area of the law, and in the absence of any objection

from the defendant, the court determines that appointment of plaintiffs' counsel as class

counsel is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** plaintiffs' Amended Motion

for Class Certification (Doc. No. 60) and **DENIES** defendants' Motion to Dismiss (Doc.

No. 58).  Class A and subclasses of Classes B and C are hereby **CERTIFIED** as

defined below.

"Class A" shall consist of all persons to whom defendants sent or caused to be

sent a fax advertisement containing a notice identical or substantially similar to the Opt-

Out Notice from June 1, 2012 through March 14, 2013, or on October 17, 2010, January

14, 2011, January 22, 2011, January 30, 2011, June 6, 2011 or June 25, 2011.

"CTLA Class B" shall consist of all persons whose fax numbers defendants

obtained through the CTLA directory and to whom defendants sent or caused to be sent

an unsolicited fax advertisement from June 1, 2012 through March 14, 2013, or on

October 17, 2010, January 14, 2011, January 22, 2011, January 30, 2011, June 6, 2011 or June 25, 2011.

"CTLA Class C" shall consist of all persons in Connecticut whose fax numbers defendants obtained through the CTLA directory and to whom, without having obtained express invitation or permission, defendants sent or caused to be sent a fax advertisement from June 1, 2012 through March 14, 2013 or on June 6, 2011 or June 25, 2011.

Lead plaintiffs Roger H. Kaye and Roger H. Kaye, MC PC are hereby **APPOINTED** as class representatives of each class.  Plaintiffs' counsel, Attorneys Aytan Y. Bellin and Roger Furman, are hereby **APPOINTED** as class counsel for each of the three classes.

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of May, 2014.

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

28